Appellant Case 17-6278 EEOC et al. v. Dolgencorp LLC Our oral argument is 15 minutes to be shared by plaintiffs, 15 minutes for defendant. Mr. Graham for the appellant. Good morning. It's good to be last. May it please the court, Chief Judge Cole, I've asked to reserve five minutes for rebuttal. As the district court erred in allowing this ADA case to go to the jury, and in awarding nearly $450,000 in attorney's fees to intervene our plaintiff's counsel for the reasons that I'll discuss here today, and as briefed fully, judgment should be entered for Dolgencorp LLC, which I will be referring to today as Dollar General. It's what it's more commonly known as. And in the alternative, we're asking that the fee award be set aside or reduced for the reasons stated. The EEOC and charging party, Linda Atkins, have co-prosecuted this case from the outset. Ms. Atkins, as we all know, used to work for Dollar General as cashier. During a loss prevention audit of her store, she and two of her coworkers each admitted to violating a policy that Dollar General has against taking any of its product without first paying for it. Even if you later pay for it, you have to pay first. All three of those individuals were terminated. Very briefly, there are three independent bases for reversal of the court's judgment below. I'll discuss each more fully, time permitting. First, the underlying charge in which the entire case rests was untimely. It was to be filed not within 300 days, as alleged by the plaintiffs, but within 180 days of the challenge. So the exhaustion statute refers to whether the state entity has the authority to grant or seek relief. It doesn't talk about this theory or that theory. And they do have authority to grant relief for this type of discrimination. So it seems funny to me. Even if you're right, hypothetically, about one way of proving discrimination, why do we have to worry about it? I mean, it asks whether there's authority to grant or seek relief. And that undeniably is true in this case. They could have granted relief in this case. Your Honor, on that point, the statute first bears mentioning the baseline is that a charge under this section shall be filed within 180 days. There is an exception for the 300 days. But the charge shall be filed within 180 days after the alleged unlawful employment practice occurred. Unless in a case of an unlawful employment practice with respect to which the person aggrieved has initially instituted proceedings with a state or local agency, not just with authority to grant or seek relief, but with authority to grant or seek relief from such practice. The practice that is challenged here is that Ms. Atkins says that she was not reasonably accommodated under the ADA. Yeah, but there's also a pure disability firing. Which is also premised. You can go to Tennessee and get relief for that. But that's not the theory that they pursued at trial. The theory they pursued at trial is that her discriminatory discharge claim is premised on the notion that had she been accommodated, then she would not have engaged in the conduct that led to her discharge. They specifically disclaimed that anybody had any bias against her because of disability. So to me, the analogy is in discrimination law, you can have intentional discrimination, and then you have disparate impact theories of discrimination. When you ask a question, is there authority to grant or seek relief, you don't ask how many paths do they allow you to get to the conclusion of disability discrimination. Accommodation is just one path of getting there. Not the only one, but it's one. And the point is, they have this authority, and you don't ask yourself, do they recognize disparate impact discrimination? You ask yourself, can they provide relief for discrimination? And it makes perfect sense. I mean, even if it's true that only one of their paths is recognized, you still want them to do this. And the reason you want them to go down this road is they may fix the problem. That's good. That's what exhaustion is about. And, Your Honor, the distinction I would ask to be drawn here is that the Tennessee Human Rights Act, the Tennessee Disability Act in particular, it does not have and never has had the concept of reasonable accommodation. By words, by words. I mean, you don't have a Tennessee Supreme Court decision. You've got, what, a federal court decision, a Tennessee lower court decision. God only knows, but I don't even think it matters. Well, and I would submit that it does, Your Honor, simply because the Americans with Disabilities Act injected the idea of reasonable accommodation into the statute. It does not flow naturally from a prohibition on discrimination. Discrimination is that individuals shall be treated equally without regard to a protected category. Here, the ADA went one step further and imposed an affirmative obligation to take steps, not just treat those with disabilities equal, but to engage in this concept known as reasonable accommodation, which does not exist under Tennessee law. I'm quite sure you're wrong about that. ADA comes along in 1990. Every state in the country had anti-discrimination laws, and I'm highly confident many of them had requirements of reasonable accommodation before 1990. Now, Tennessee may not have been one of them, and that's the heart of your argument, but it just doesn't make sense to me when they say the authority to grant or seek relief. It doesn't say the authority to grant or seek relief under this or that theory. Well, it does say authority to grant or seek relief from such practice, and the notion of employment practices, in fact, is something that EEOC ---- The practice is a firing. The practice is a firing. It's a hiring. It's a promotion. It's a reasonable accommodation. These are things, in fact, this is noted in our brief, that even the EEOC, when it on its own website notes what it considers to be unlawful employment practices, it has a litany of things that it considers practices that include hiring, promotion, and reasonable accommodation as a separate and distinct employment practice. And so with Tennessee not recognizing the concept of reasonable ---- But here there was a firing. A firing that the plaintiffs contend resulted from the failure to accommodate. I know, but there's a firing, and Tennessee will give you relief for being fired based on disability discrimination. Your Honor, that actually leads to the second independent basis for this case to be reversed, and that is that the plaintiffs specifically disclaimed a disparate treatment theory at trial by conceding that they were not accusing Dollar General of harboring any bias against Ms. Atkins' diabetes. The court nonetheless allowed the claim to go to the jury, and in a manner that allowed the jury to fine for the plaintiffs, even in the absence of a finding of discriminatory motive. Finally, even if Ms. Atkins' charts have been timely ---- But where is that coming from? I mean, you don't have to ---- I didn't know any theory of discrimination required animus. And the whole point of the ADA is to deal with the problem that there's a lot of, quote, innocent discrimination against the disabled. So I guess I'm just puzzled by that. I realize that is a sufficient ground for getting relief, but I never thought of it as a necessary one. Well, and I believe it is, Your Honor. In fact, there are cases decided by yourself and by Judge Cole that address this point, and Gohl v. Livonia Public School District being one of them, which notes the Americans with Disabilities Act requires the plaintiff to present sufficiently significant evidence of animus toward the disabled that is a but-for cause of the discriminatory behavior. I mean, listen, I'll go read it, and if you want me to, I will, but I'll tell you what I think it's going to say or what the law says, and you tell me whether you still want me to read it. It's a because of, right, that's the question, because of the disability. That doesn't prove you have to have animus towards the disabled. In other words, someone that can't get into a building because there's no ramp, to prove discrimination when you fire them because they can't get into the building, you don't have to show you don't like the disabled. You have to show you knew they had a disability, and you fired them because of the disability. You could have an innocent state of mind on every other thing, and if you want me to keep – I'll read it, but I will not be overjoyed if when I read it, I learn that what I'm saying is accurate. Your Honor, I would be remiss if I were to tell you to read it or not to read it, but I would submit that the distinction here that does not require you to read the opinion is that Ms. Atkins does not say that she was discharged because of her disability. She says she was discharged because her disability was not accommodated. It's because of the notion that she was not accommodated that she was discharged. And here, the third independent basis for the reversal of the judgment is that the testimony of Ms. Atkins and her own health care provider demonstrate that no accommodation here was necessary. Nurse Thayer was Ms. Atkins' health care provider who testified that in order for Ms. Atkins to treat a drop in the level of blood sugar, she needed to ingest glucose in some form, and that they were equally effective. That included glucose tablets, which Ms. Atkins owned and, in fact, carried in her car rather than carrying on her person. It could include glucose liquid. It could include juice, which she brought to work with her each day and stored back in the break room. Here, Ms. Atkins chose, instead of carrying her glucose tablets on her, instead of ingesting glucose in some other form, she violated a policy that was known to her. Oh, wait. If she had taken the glucose tablets at the register, wouldn't that also have violated your no eat, no drink policy? It would not. Not glucose tablets. Glucose tablets would be considered a form of medication. What if she needed water to swallow them with? Well, they don't. They're chewable. Okay. Well, I mean, I don't know if that's in the record or not, but, I mean, when she went to you to request a reasonable accommodation, right, to say, I'd like to bring my own orange juice and keep it with the counter, maybe you could have said, no, you need to have glucose tablets. But you didn't say that at all. You just said, well, no orange juice. Actually, I think the distinction here that Blair's mentioning is that the manager to whom Ms. Atkins said she requested to keep OJ did not say no. She said watch the cameras. So this violates our policy and watch the cameras, which to me sounds like no. What is she supposed to do, like duck underneath the counter when she drinks the orange juice? I mean, that sounds pretty amusing as a way of dealing with this. That's the accommodation. The accommodation was that Ms. Atkins did not need one in the first instance because she had equally viable options available to her, including glucose tablets that she had. That's Judge Larson's question. Why didn't they say that? Isn't there some other way? It should have been obvious to Ms. Atkins. She already owned them. She already kept them in her car. She knew that she needed to ingest glucose. She owned it. She knew what to do. I just thought that the law was that once you request an accommodation of your employer, that the employer now has a duty to engage in some kind of discussion to figure out another way to handle this. Unless it is obvious, and it should have been obvious to Ms. Atkins. Well, that's just my point. I mean, the employer, as I understand it, has the obligation to engage in some interactive discussion, and it very well may have occurred or been that Ms. Atkins, get the name right, would have said the glucose tablets don't work as well. I mean, I think there is something in the record to that effect. The orange juice is something that's natural. I can regulate. It treats the hypoglycemia immediately, and that's not the case with the tablets. But she didn't have a chance to do that here, as I understand the record. Am I wrong about that? Her testimony is that she felt that she was unable to get to her own orange juice back in the back of the store. She had customers in line, and so she elected to take the product from the Dollar General Cooler instead. Would she have been okay if she had paid for it first? I'm sorry? Would she have been okay if she had paid for it first? She would have. You said earlier the problem was that she would have. But I thought she couldn't cash herself out. Well, the policy requires – She's in the store by herself. She's not allowed to cash herself out. She can't pay for it. She had her own orange juice there. In the back. She did. And if she'd left the customers alone in the front to go to the back, he would have fired her for that. There's no evidence in the record that she would have been fired for that. But just so I'm understanding, the policy is you can't drink or consume something and then pay for it, but you could – was the orange juice too far from the counter or something? The orange juice is kept in the break room, which is in the – Her own orange juice. No, no, I'm talking about the store's orange juice. I'm sorry? You're saying she would have been fine if she'd paid for the orange juice before – Pursuant to the policy, yes. The policy – She still could have had policy. I believe that the testimony Jerry West, the employee relations manager, testified, I believe, and forgive me if I misstate, that it would not have been a violation had she consumed her own orange juice or consumed orange juice that had been purchased properly. And, again, I may be mistaken. Including at the counter. So it's just a question of when you pay for it. The policy is a zero-tolerance policy as demonstrated by the fact that three individuals all were terminated on the same day for the same reason by the same decision. But can we just be clear? Zero-tolerance as to what behavior? As to violating the employee purchase policy. Which is – Pay first. No, eat first, pay later. That's the violation. That's correct. That's correct. The two individuals who were also – Eat first, pay later is the violation, but she could not have paid first because she's alone in the store and she can't cash herself out. Here, she did not need Dollar General's orange juice at all is our position. She did not need Dollar General's orange juice at all. That was not a necessary accommodation for her. And my time is clearly up. Thank you. Thank you. You'll have your bubble time. They would have made another sale. Yeah. They're in the business of selling orange juice. That's exactly right, Your Honor. This is the orange juice case. Everyone in my office talks about it as that. Everything that Ms. Atkins could have done would have violated a rule. If she ate or drank at the register, that was a violation. If she ran back to her – to the break room to get the juice, that would have been a violation. There was just nothing she could have done without violating the rule. The defendant says it's a zero-tolerance policy, but they didn't discipline or even reprimand the supervisors who were not enforcing the rule in their own little office. It really wasn't a zero-tolerance policy. And, in fact, the rule itself said discipline up to and including discharge. I'm sorry. I didn't introduce myself. I'm Barbara Sloan for the EEOC. No problem. I'm splitting my time with Ms. Aish. Let's see. Can you clear up a little debate I'm having with my law clerk on this? And I'm not going to tell you who's on which side of the debate. Is reasonable combination of freestanding – I realize it's a freestanding path to showing disability discrimination, a failure to accommodate. But I'd never thought of it as, like, its own claim by itself. Am I hypothetical to illustrate that? I guess I am revealing which side of the debate I'm on. But you couldn't – like, someone that said, I have a medical need to come in at 10 o'clock on Wednesdays. I mean, just whatever it is. And they ask for an accommodation, and the company says no. And then the person says, but are you going to fire me? Will that reduce my wages? They say no. We're not going to say you can do this. But we're also not going to do a single thing that's hurtful to you. You wouldn't have a reasonable accommodation claim, would you? Well, then you probably wouldn't have any injury. Right. So I guess my point is you have to have a discriminatory act, which is something, whether it's a firing, reduction in wages, failure to hire. So that's what makes me think – because I'm kind of responding to your friend's argument on the other side. Is there just one claim here, or are these different paths to the ultimate disability discrimination? I'm a little embarrassed that I don't know the answer to that. The ADA defines discrimination. It says it's illegal to discriminate based on disability – excuse me, on the basis of disability. That's the ultimate claim. And then it says in Part B, and discrimination is defined to include – and then it has a laundry list of things that would be considered discrimination, one of which is failing to provide a reasonable accommodation. That has to be accompanied by an act that hurts the employee. Well, I suppose normally that's true. That's why they really dovetail very closely, the termination and the reasonable accommodation. I suppose if the person – there are cases, for example, where an individual is denied – a stool needs to sit down because of a back injury or a leg injury or something like that. And she's denied the stool, and she's kept in great pain, great pain, great pain, great pain, and is constructively discharged. You have the constructive discharge. But I suppose before you get there, there might be some kind of compensatory damages because of the pain that she was experiencing. But normally – So what does that discussion – how does that help us figure out this timeliness issue? Because it seems – I think his response is their only path to victory was through reasonable accommodation. And we have these cases that suggest the Tennessee courts wouldn't recognize that claim under their disability discrimination law. And I was thinking to myself, well, yeah, that's true, that's one path. But there's also just the question, was there disability discrimination? Well, that's exactly – I mean, EEOC takes the second approach. We say that an agency is a FEPA if it prohibits discrimination generally. It doesn't matter what theories they recognize. Right, exactly. And there's a practical reason – this is commercial office products all over again. There's a practical reason. We have over 100 FEPAs that we are involved with. Each of them has multiple statutes, all with multiple claims. And our investigators are the ones that have to make the initial cut, what's being complained about here. And not all complaints are as nice and clean as Ms. Adkins' because a lot of the charging parties are not represented. So it takes a while to unravel what it is exactly they're complaining about. They come in, they say, I was fired because of my disability. Okay, that looks like it's covered. All of that leads you to the punchline that if there's any possibility that the state entity could give relief, the 300-day rule applies. If there's not an explicit statutory exemption in the statute saying we do not cover X, then we assume that disability discrimination is what the FEPA is enforcing. Well, what would happen in this case in terms of 300 versus 180 days if the Tennessee Supreme Court had said explicitly our statute does not cover reasonable accommodation type claims? What would have happened? Everything else is the same in this case. What would have happened? Well, Your Honor, I'm not familiar with any cases where we're involved with the Tennessee Supreme Court or any other Supreme Court interpretation of a statute. Normally, we have discretion to interpret this provision, and we interpret it to say that if the FEPA's... Well, make it easier. Just the Tennessee statute says we allow relief for disability discrimination, but we do not have a freestanding reasonable accommodation path of showing disability discrimination. We don't allow anyone to get relief for... It's exempted in the statute, and then you have this exact claim, which seems to have more than one component to it. Well, I think the... Yeah, and I'm probably not answering your question as directly as you would like, but if EEOC interprets the statutory language, as the district court did here, to say that if the FEPA is authorized to... Yeah, but I'm just asking a hypothetical. Hypothetically, the Tennessee disability discrimination law exempts, prohibits, a claim based solely on reasonable accommodation. What would have happened with this case? Would you have said, well, the 180-day rule applies, or would you have said, well, this case has reasonable accommodation, but it also has a straight-up disability discrimination... Just a second, Your Honor. I understand. Absolutely, the person is complaining about disability discrimination, one form of which was failure to accommodate, but she was terminated because of her disability. That was what she was complaining about, and I have not left any time at all for my co-counsel. Sorry about that. Do you have any other questions? Do you have any? Did you segment the time? Yes. Oh, okay, so I have 14 more seconds? Yes. Okay, well, we certainly hope that you'll affirm this, Your Honor. Have I answered your question? You have time for that. I mean, yes. So, have I answered your question? You did. Thank you. Okay. Thank you. Thank you, Your Honor. Good morning, or perhaps it's afternoon now. I'm not sure, but may it please the Court, my name is Meha Ayish, and I'm here on behalf of the intervening plaintiff, Linda Atkins, as well as my co-counsel, Jennifer Morton, who's in the courtroom today. Your Honor, I did just want to point out, I think the timeliness issue has been addressed by both parties already, who have spoken before me, but this issue of – I want to point out that if you look at the EEOC charge form that parties fill out when they file their charges with the EEOC, there is no box for reasonable accommodation. There is a box for disability discrimination. There is a box for race discrimination. There is a box for national origin discrimination, sex discrimination. There is no reasonable accommodation box because the way that the EEOC views it, my understanding is they're looking to see is there a disability discrimination claim. And to decide whether or not Tennessee would be a deferral state for the purpose of that claim, you look at is there enabling legislation in that state that refers to the same basis of disability. In this case, we're talking about the same basis of discrimination. In this case, we're talking about disability. So Tennessee was a deferral state for purposes of this claim. I also want to point out that the Tennessee Code that establishes the THRC says that its purpose is to assure appropriate legislation sufficient to justify the deferral of cases by the EEOC. It's explicitly there so that Tennessee could be considered a deferral state. To the defendant's point that the only claim that we are pursuing is a reasonable accommodation claim, that's simply not true, the court actually, even over our objections, instructed the jury on a standard McDonnell-Douglas burden-shifting analysis. After four days, a jury heard the evidence. The jury heard the exact arguments, the substantive arguments that Mr. Graham and Dollar General are making to the court, have made in their briefs the arguments regarding the accommodations, whether it was necessary, the arguments regarding whether or not there was disability bias or animus. The jury heard all those arguments. The jury decided that in this case, Ms. Atkins' termination was because of her disability and awarded her damages based both on a failure to accommodate claim and on a disability discharge claim. The disability discharge claim, one component of that was that their failure to accommodate her led to her discharge, but another component was just that they discharged her because of her disability. And there was abundant evidence in the record that the jury could rely on to show that. And so, as Your Honor knows, the deference, Your Honors know that the deference as given to jury verdicts is great. And what Dollar General is trying to convince the court is that regardless of all the evidence that the jury heard, that something has gone so awry in this case that the court should disregard the jury's verdict and reverse that. And, of course, we believe, Your Honor, that is not the appropriate result for the court to reach in this case. I did want to also mention in regards to the Goal case, and I did review that case, and it was a case that was authored by yourself, Judge Sutton. And my understanding of that case was that the defendant does cite a sentence from that case, but the way that case goes on to interpret the facts in that case is it's saying essentially, do you have sufficient circumstantial prima facie evidence that would lead to the presumption of intent? And if not, is there any direct evidence of animus? That is the way that I read the Goal case, Your Honor. The Goal case, I guess the defendant can pick out a sentence from it that says one thing, but if you look at it in context, I do not believe that it's creating a burden on every single disability discrimination plaintiff to prove that a defendant dislikes a person because they're disabled. Because it's important for Your Honors to realize that when the defendant says that we acknowledge or ceded the fact that there was no animus, what they're saying is that there was a statement made in closing argument in which we said there is no evidence that we understand it's not the type of case in which they, we're not saying they fired her because they hate disabled people, or that they fired her because they disliked the fact that she had diabetes. Well, obviously, Your Honor, that's not what we need to prove in this case. They may have fired her because they don't want to accommodate her. Because they realize not only is she a disabled person with diabetes, but she's someone now who wants some sort of exemptions from our rules. And if that's the reason that they fired her, then that is disability discrimination. That's unlawful under the ADA, regardless of whether they generally like people with disabilities or diabetes. In regards to whether the manager said no, I think Your Honors dealt with that. There were multiple witnesses who heard the store manager say that she can't have her orange juice with her because it would violate store policies. Ms. Atkins was facing a situation in which she had a line of customers at the cash register that she was exhibiting symptoms of insulin shock or hypoglycemia. She was told that she couldn't have her own orange juice with her. She couldn't go back to the back of the store to get her orange juice. And so she took, in my opinion, the most appropriate option she had available at the time, which was to grab a close-by bottle of orange juice. And it's important to note, Your Honor, that the defendant's decision-maker said, well, if she had self-reported that conduct, then we may have excused it. Well, she did self-report it. She told her manager right away. Her manager, who is not trained in disability accommodations, perhaps thought she was making an accommodation by just not firing her for this so-called one-strike policy, that they're claiming that the grazing policy is a one-strike policy, when in fact managers, store managers, seem to exhibit a great deal of discretion in terms of whether they allowed people to, whether they disciplined people at all for that policy, because there's evidence that. About the glucose. I'm sorry to interrupt. Yes. Dollar General says, look, she has glucose tablets that work just as well. She had them in her car. She owned them. Why did she need an accommodation from Dollar General? Right. So the testimony also about the glucose tablets was Ms. Atkins said that she had purchased it once. She had heard about them, purchased them, looked at it, realized that she would need to take four to five of these Alka-Seltzer-sized glucose tablets in order to get the recommended amount of sugar in her system to overcome hypoglycemia. So she never even opened the packet. She left it in her car. It's been sitting in her car for years. It was sitting in her car yesterday when I talked to her. So the fact that they're suggesting that she should have done that, I mean, she made Ms. Thayer was not testifying as a medical expert. She was testifying as Ms. Atkins' treating medical provider. She said that, yes, there's these various ways that people can treat hypoglycemia, but it really depends on each person. There was no testimony that Ms. Atkins, that all these treatment options would have been the same for Ms. Atkins. Ms. Atkins testified about why she chose orange juice. And the key, and I think, Judge Larson, that you're the one who brought this up, was that they offered her nothing. And for them to say that she's not entitled to the option of her preference, well, she was given no option. She was given no option but to violate the defendant's policies. They're telling her now that she should have known which policy to violate. She should have known that the grazing policy was the big no-no and that that one would have gotten her fired. But the fact is that she had four or five different policies that she could have, that she was left with the decision of which one am I going to violate. And she violated the one that was the most appropriate in her situation, which was to relieve her condition as quickly as possible while also not leaving the store in a vulnerable position by leaving customers at the front of the line unattended. So in this case, and again, the whole purpose of the interactive process is so you can reach the conclusion and decide what accommodation is appropriate for both parties. They fail to do that. They admit that there would not have been an undue burden in accommodating her or an undue hardship. And for that reason alone, she should win her case. Thank you. Thank you. As the Work Share Agreement between the EEOC and the Tennessee Human Rights Commission states, and I quote, there is no reasonable accommodation requirement under the Tennessee Disability Act. The EEOC and the Tennessee Human Rights Commission have a system in place, in fact, where if, and again, quoting from the Work Share Agreement, that in recognizing the differences between the TDA and the ADA, THRC will transfer to EEOC for initial processing each disability charge it originally receives, which includes alleged issues covered by the ADA, but not by the TDA. So the unavailability of reasonable accommodation under Tennessee law is well known. It's documented, and it's something that the EEOC and the THRC themselves observe. Judge Sutton, you asked counsel about whether or not reasonable accommodation is a stand-alone claim, and counsel noted that the ADA has a special definition of what it considers to be discrimination on the basis of disability to include not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability. I would submit that if Ms. Atkins believed that she was not reasonably accommodated when she was told about the issues at the register, that alone would have required her to make a charge. If she felt that she should have been reasonably accommodated... Well, she would have first been on notice of a charge related to her alleged failure to be accommodated. Wait, I thought the mere failure to accommodate wasn't actionable. You'd have to take an adverse employment action against her as well. I don't believe that's the case. If somebody believes that they are being denied a reasonable accommodation, they don't have to wait until they are discharged in order to bring it to me. What would have been the injury here? They could have sought injunctive relief. They could have asked for a court order that the employer be directed to reasonably accommodate the individual. No, but I mean, damages-wise, there wouldn't be a damages... It doesn't have to be damages under the ADA. So forward-looking next incident, let me buy the orange juice. Well, forward-looking next incident, she should have accommodated herself in the way that she had available to her, which would have included... That perfectly captures your position. It's about accommodating yourself. And the reason for that, Your Honor, is that it's like if I have a headache, I don't need to ask permission to take an aspirin. It's common sense. If I have a headache, I take aspirin. If I have low blood sugar, then I take glucose tablets. I have some in my pocket. They're right here. If it's so common sense, why didn't her manager say, pull out the glucose tablets next time? Because Ms. Atkins is the one who had the diabetes. She knows how to treat her own condition. She should. Go back to what I said. Accommodate yourself. Your Honor, the other notion that disability... Excuse me, that the agency need only address discrimination generally, I think is directly belied by, as an example, the Genetic Information Nondiscrimination Act, which is not recognized under Tennessee law. There's not a statute that says we don't recognize genetic discrimination. But the EEOC, again, notes that because GINA is only recognized under federal law, unless a state has a specific statute on that point, then a claim needs to be filed within 180 days. Very briefly, I'd like to address the attorney's fees issue. The court had very recently established a prevailing market rate within the Eastern District of Tennessee that was completely disturbed by the court's decision here. In fact, increased the prevailing market rate, which is designed to attract competent counsel to accept a case. Increased that hourly rate by 40 percent in this case. And in so doing, we believe, erred by basing the hourly rate on the results obtained and the alleged complexity of the case, which are matters that if they are to be considered at all, should have been addressed after calculating the hourly rate and establishing it at what it had already been, which is $250 an hour in that district. And in fact, Ms. Atkins' counsel had been specifically recognized in one of those cases that recognized that rate. But that if the results obtained were particularly good, and if the case was particularly complex, which I would submit this case was not as a straightforward ADA case, that that should have been addressed when adjusting the load star, not when setting the prevailing rate. The court also erred by awarding nearly $450,000 in fees to intervene her plaintiff's counsel for prosecuting half of a case, a case that she and the EEOC co-prosecuted. They pursued identical theories at trial, they acted as co-counsel, and the court here erred by not reducing the fee award to account for those efficiencies. My time is up. Thank you, Your Honors.